TIFFANY CHEUNG (BAR NO. 211497)
TCheung@mofo.com
CAMILLE FRAMROZE (BAR NO. 332075)
CFramroze@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
ELISABETH HUTCHINSON *(admitted pro hac vice)*
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
370 17th Street, Suite 4200
Denver, CO 80202-5638
Telephone: (303) 592-1500
Facsimile: (303) 592-1510

Attorneys for Defendant
EXPRESS SCRIPTS PHARMACY, INC. DBA
WWW.EXPRESS-SCRIPTS.COM

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ESPARZA<br><br>          Plaintiff,<br><br>     v.<br><br>EXPRESS SCRIPTS PHARMACY, INC., a Delaware entity, dba WWW.EXPRESS-SCRIPTS.COM,<br><br>          Defendant. | Case No. 3:25-cv-1988 AJB DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY THE ACTION UNDER THE FIRST-TO-FILE RULE, OR IN THE ALTERNATIVE TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)**<br><br>Date: January 15, 2025<br>Time: 2 p.m.<br>Courtroom: 4A (4th Floor)<br>Judge:   Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

    1.   *Lynch* Was Filed Two Years Before This Action and Involves Substantially Similar Claims and Parties ................................. 2

    2.   Plaintiff Consented to the Use of Online Technologies ....................... 4

III.   Legal Standard ................................................................................ 5

IV.   Argument ......................................................................................... 6

    1.   This Court Should Dismiss Or Stay This Action Under The First-to-File Rule ........................................................................... 6

       A.   *Lynch* Was Filed First ........................................................... 6

       B.   The Parties Are Substantially Similar ..................................... 6

       C.   The Issues Are Substantially Similar ...................................... 8

       D.   No Exception to the First-to-File Rule is Applicable ................ 9

       E.   Dismissal is Appropriate Under the First-To-File Rule ........... 9

    2.   In the Alternative, This Court Should Dismiss This Action Under Rules 12(b)(1) and 12(b)(6) ........................................................ 10

       A.   Plaintiff Lacks Article III Standing ....................................... 10

       B.   Plaintiff's Allegations Are Impermissibly Vague ................... 12

       C.   Plaintiff's Consent Defeats All Claims ................................. 13

       D.   Plaintiff's ECPA Claim Fails for Additional Reasons ............ 14

       E.   Plaintiff's CIPA Claim Because the Magnite Pixel is Not a "Trap and Trace" Device ...................................................... 19

       F.   Plaintiff Fails to State An Intrusion Upon Seclusion Claim .... 21

V.    CONCLUSION ................................................................................ 25

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
CASE NO. 3:25-CV-1988 AJB DDL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ...................................................................................5

*Application of U.S.A. for an Order Authorizing Use of Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ....................20

*Aqua Connect, Inc. v. SHI Int'l Corp.*,
No. CV 19-05662-AB (JPR), 2019 WL 8883452 (C.D. Cal. Dec. 16, 2019)....................................................................................................................7

*Arellano v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
No. EDCV 22-00639 ...................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................6

*Bell. Alt. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................6

*Beltran v. Doctors Medical Center of Modesto*,
No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ...........................................................................................................................12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................................................................17

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007)...................................................................19

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................................................................1

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)..........................................................................................................................11

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................................................................15

ii

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
    891 F. Supp. 2d 13 (D.D.C. 2012) ................................................................. 15

*In re Facebook, Inc. v. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................... 22

*Gatlin v. UPS, Inc.*,
    No. 2:18-cv-03135-SVW-AS, 2018 WL 101611 (C.D. Cal. Aug. 23, 2018) ......................................................................................................... 9

*In re Google Inc. Gmail Litig.*,
    No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...................................................................................................... 16, 17

*In re Google Inc. Priv. Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .............................................................. 24

*In re Google Location History Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ............................................................ 25

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................ 17

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................................... 22

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................. 12, 23, 25

*Herrera v. Nat'l Vision, Inc.*,
    No. 23-cv-1350-LAB-WVG, 2023 WL 5917410 (S.D. Cal. Sept. 11, 2023) ......................................................................................................... 9

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ................................................................................... 21

*Herzer v. Redstone*,
    No. 17-CV-7545 PSG, 2018 WL 5094933 (C.D. Cal. July 10, 2018) ............................................................................................................... 15

*Hubbard v. Google LLC*,
    No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .............. 23

iii

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)..................................................................12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................24

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..................................................................................6

*King v. Hard Rock Café Int'l (USA), Inc.*,
No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025).......................................................................................................... 13, 18

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (N.D. Cal. 2012)............................................................................15

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015).......................................................................5, 6, 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)................................................................................19

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025).................................................................14

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ...............14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)...................................................21, 22, 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................10

*M.D. v. Google LLC*,
No. 24-cv-06369-AMO, 2025 WL 2710095 (N.D. Cal. Sept. 23, 2025)......................................................................................................................23

*Maciel v. Flowers Foods, Inc.*,
No. 20-CV-03814-WHO, 2020 WL 5760448 (N.D. Cal. Sept. 28, 2020)........................................................................................................................9

iv

*Marcelo v. Amazon.com, Inc.*,
　No. 21-cv-07843-JD, 2023 WL 1069880 (N.D. Cal. Jan. 27, 2023) ............... 7, 8

*Martin v. Sephora USA, Inc.*,
　No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar.
　30, 2023) ....................................................................................................... 19

*McHenry v. Renne*,
　84 F.3d 1172 (9th Cir. 1996) ......................................................................... 12

*Mikulsky v. Noom, Inc.*,
　682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................................... 12

*Mitchener v. CuriosityStream, Inc.*,
　No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ......... 20, 21

*Moody v. C2 Educ. Sys. Inc.*,
　742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......................................................... 13

*Moretti v. Hertz Corp.*,
　No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .............. 13

*Nguyen v. Barnes & Noble Inc.*,
　763 F. 3d 1171 (9th Cir. 2014) ...................................................................... 13

*Opperman v. Path, Inc.*,
　205 F. Supp. 3d 1064 (N.D. Cal. 2016) ......................................................... 13

*Optoma Tech. Inc. v. Maxwell Ltd.*,
　No. 24-cv-08147-TLT, 2025 WL 1148286 (N.D. Cal. Mar. 14,
　2025) ............................................................................................................... 7

*Peavy v. WFAA-TV, Inc.*,
　221 F.3d 158 (5th Cir. 2000) ......................................................................... 15

*Pedro v. Millennium Prods., Inc.*,
　No. 15-cv-05253-MMC, 2016 WL 3029681 (N.D. Cal. May 27,
　2016) ............................................................................................................... 6

*Popa v. Microsoft Corp.*,
　153 F.4th 784 (9th Cir. 2025) ........................................................... 5, 6, 10, 11

v

*Posadas v. Goodyear Tire & Rubber Co.*,
   No. 23-CV-0402-L-DDL, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) .......................................................................................................21, 25

*Price v. Headspace, Inc.*,
   No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 01, 2025).......... 18, 20

*Rodriguez v. Autotrader.com, Inc.*,
   No. 2:24-cv-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) ....................................................................................................... 10

*Rodriguez v. Autotrader.com, Inc.*,
   No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)..................................................................................................... 11, 23

*Rodriguez v. Google LLC*,
   No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)................ 16

*Rodriguez v. Google LLC*,
   No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)................... 19

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2020) ..................................................................................................25

*Saedi v. SPD Swiss Precision Diagnostics GMBH d/b/a/ Clearblue*,
   No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 at *6 (C.D. Cal. Feb. 27, 2025) ................................................................................................21, 22

*Sanchez v. Cars.com Inc.*,
   No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025).............20, 21

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018).................................................................... 11, 13

*Smith v. Facebook, Inc.*,
   262 F. Supp 3d 943 (9th Cir. 2018).................................................................. 13

*Steinberg v. CVS Caremark Corp.*,
   899 F. Supp. 2d 331 (E.D. Pa. 2012)................................................................22

*Sussman v. ABC, Inc.*,
   186 F.3d 1200 (9th Cir. 1999).......................................................................... 16

vi

*Thomas v. Papa Johns Int'l, Inc.*,
   No.: 22cv2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8,
   2024) ........................................................................................................... 23

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...................................................................................... 10

*Urbina v. Freedom Mortg. Corp.*,
   No. 1:19-cv-01471-NONE-JLT, 2020 WL 4194086 (E.D. Cal. July
   21, 2020) ......................................................................................................... 9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...................................................... 5, 9

*Weston v. Lefiti*,
   No. 23-cv-0896-L-DDL, 2023 WL 8458249 (S.D. Cal. Dec. 5,
   2023) .............................................................................................................. 16

*Young v. L'Oreal USA*, *Inc.*,
   526 F. Supp. 3d 700 (N.D. Cal. 2021) ............................................................ 6

*Zimmer v. Dometic Corp*,
   No. 2:17-cv-06913 ODW, 2018 WL 1135634 (C.D. Cal. Feb. 22,
   2018) ............................................................................................................. 8, 9

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...................................................................... 17

**Statutes & Rules**

18 U.S.C.
   § 2511(2)(d) ................................................................................................... 13
   § 2520(a) ........................................................................................................ 15

Cal. Penal Code
   § 638.50(c) ..................................................................................................... 18
   § 638.51 ............................................................................................... 13, 18, 21

Fed. R. Civ. P.
   Rule 8 ............................................................................................................. 12
   Rule 12(b)(1) ............................................................................................ *passim*
   Rule 12(b)(6) ............................................................................................ *passim*

## I.   INTRODUCTION

Plaintiff Miguel Esparza is a self-described "tester" who has filed over twenty-five wiretapping cases in this year alone.  Courts across California have also found that Plaintiff's counsel is a "serial litigant" that brings "numerous 'cookie cutter' lawsuits"[1] under the California Invasion of Privacy Act ("CIPA") against businesses that operate websites.  In one case in the Central District, a court observed that Pacific Trial Attorneys works with "multiple 'tester' plaintiffs to drum up these lawsuits."[2]  As other courts have done, this Court should also dismiss this cookie-cutter complaint because it fails to state a claim.

In addition, this lawsuit should be dismissed because it is duplicative of a putative class action already pending in the Northern District of California, *Lynch v. Express Scripts Holding Company*.  Both cases arise from the same alleged use of online analytics and web-enhancement technologies ("Online Technologies") on the same website, www.express-scripts.com (the "Website").  Because *Lynch* was filed over two years earlier, the first-to-file rule provides a separate ground for dismissing (or staying) this action.

Even if the Court declines to apply the first-to-file rule, however, Plaintiff's Complaint should still be dismissed for several reasons.

***First***, Plaintiff does not have Article III standing to bring this lawsuit because he is a self-described "tester" who used the Website without any reasonable expectation of privacy and therefore did not suffer any concrete harm.  Further, he pleads no facts showing that the alleged Magnite pixel at issue collected any sensitive or confidential information, and thus fails to allege an injury-in-fact.

***Second***, Plaintiff's allegations are impermissibly vague.  Plaintiff offers only generalized references to having visited the Website, without specifying what webpages he visited, and what information he allegedly entered, and inconsistent

---

[1] *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060 (C.D. Cal. 2023).
[2] *Id.*

allegations about what information was supposedly intercepted, and by whom, i.e., Express Scripts or the third party Magnite.

***Third***, Plaintiff's consent to the alleged use of the Magnite pixel defeats all claims. By using the Website, Plaintiff necessarily encountered a clear and conspicuous pop-up banner with which he was required to engage before navigating further, which disclosed the use of Online Technologies and provided opt-out mechanisms. The use of Online Technologies was also disclosed in Express Scripts' Privacy Policy, available through a persistent link on its Website.

***Fourth***, Plaintiff's claim under the Electronic Communications Privacy Act ("ECPA") fails for the following additional reasons: (i) ECPA does not provide for aiding and abetting civil liability; (ii) Express Scripts was a party to any purported communications, and the crime-tort exception does not apply; (iii) Plaintiff does not allege that the "contents" of his communications were disclosed; and (iv) Plaintiff does not allege that his communications were "intercepted" while "in transit."

***Fifth***, Plaintiff's claim under CIPA fails for the additional reason that the alleged Magnite pixel is not a "trap and trace device" as defined by the statute.

***Sixth***, Plaintiff fails to state a claim of intrusion upon seclusion because he fails to allege facts showing that there was an intrusion, that he had a reasonable expectation of privacy in his data, or that any intrusion was highly offensive.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *Lynch* Was Filed Two Years Before This Action and Involves Substantially Similar Claims and Parties

On March 15, 2023, Plaintiff Jonathan Lynch filed a putative class action against Express Scripts Holding Company ("ES Holding Company"), now known as Evernorth Health, Inc. *Lynch v. Express Scripts Holding Company*, No. 3:23-cv-01170 (N.D. Cal.), ECF No. 1. Plaintiff Lynch alleges that ES Holding Company used a Meta pixel on its Website to intercept user data without consent. (*Id.* ¶ 27.) After multiple rounds of briefing, the *Lynch* plaintiff filed a Third Amended

Complaint in August 2025, and Express Scripts' fourth motion to dismiss is pending. (*Lynch* ECF No. 67.) The court has entered a scheduling order and set deadlines for class certification. (*Lynch* ECP No. 66.)

More than two years after *Lynch*, Plaintiff filed this individual action. As in *Lynch*, Plaintiff claims that the same Website employed an online analytics and web-enhancement tool—this time, the Magnite pixel—that intercepted his data without his consent. (ECF No. 1 ("Compl.") ¶¶ 16-17.) In the Complaint, he alleges that he visited the Website "in the last year" as part of his role as a "tester" and to "investigate prescription delivery solutions." (*Id.*) In a subsequently filed declaration in response to the Court's Order to Show Cause, he alleges that he accessed the Website in April 2025. (ECF No. 5 ¶ 3.)

The *Lynch* and *Esparza* cases involve the same core allegations:

| *Lynch* **Third Amended Complaint** | *Esparza* **Complaint** |
| --- | --- |
| "This is a putative class action lawsuit on behalf of users of Defendant's services, available on its website, www.express-scripts.com[.]" (Declaration of Tiffany Cheung in Support of Motion to Dismiss ("Cheung Decl.") Ex. A ¶ 1 ("*Lynch* TAC").) | "This case involves . . . expres-scripts.com." (Compl. ¶ 1.) |
| "Defendant incorporated Facebook Pixel spyware technology . . . on the Express Scripts Platform, that in turn allowed Meta Platforms, Inc. . . . one of the largest advertising and social media companies in the country, to read, learn the contents of, make reports on Plaintiff's and Class Members' interactions with Defendant's Platform, and use the information for its own benefit." (*Lynch* TAC ¶ 4.) | "Defendant has installed the 'Magnite' tracking pixel on its website. Magnite tracks signals generated by internet users . . . ." (Compl. ¶ 3.) <br><br> "Magnite is used for advertising to consumers . . . . Magnite also uses cross-device analytics for things like location, timing, user behavior, and audience analytics." (Compl. ¶ 13.) |
| "The Facebook Pixel tracked Plaintiff's use of Defendant's Platform, and then communicated Plaintiff's confidential information to Facebook without | "Defendant and/or its agents intentionally intercepted, or procured the interception of, these electronic communications using the tracking |

3

| *Lynch* Third Amended Complaint | *Esparza* Complaint |
|---|---|
| Plaintiff's consent. . . . Plaintiff did not consent to the sharing and interception of his private, sensitive medical data." (*Lynch* TAC ¶ 20.) | pixel technology, without Plaintiff's knowledge or consent." (Compl. ¶ 37.) |

### 2.    Plaintiff Consented to the Use of Online Technologies

Plaintiff was put on notice and consented to the alleged use of the Magnite pixel on the Website in two ways.

*First*, Plaintiff claims that he visited the Website in April 2025.  (ECF No. 5 ¶ 3.)  At that time, Plaintiff would have necessarily received the following clear and conspicuous pop-up banner that states that Express Scripts "use[s] cookies to enhance your website experience, analyze website traffic, and support our marketing efforts."  (Cheung Decl. Ex. C.)  Plaintiff would also have been required to engage with the banner before proceeding to navigate through the Website, and as shown below, Express Scripts' Privacy Policy was hyperlinked in the cookie banner.  (*Id.*)

*Second*, the Privacy Policy was also available through a persistent "Privacy" hyperlink in the Website's footer, in a conspicuous white font on a bright green background, as can be seen in the screenshot below:

(*Id*. Ex. B.)  The Privacy Policy in effect in April 2025 specifically notified users of the conduct at issue here, stating that Express Scripts may:

- "use cookies, tags, and other tracking mechanisms to track information about your use of [its] Services, and to provide, customize, evaluate, and improve our Services";

- uses "Clear GIFs (a.k.a. web beacons, web bugs or pixel tags), in connection with [its] Services";

- "use[s] third-party tools, such as Google Analytics and related technologies, which are operated by third-party companies, to evaluate usage of [its] Services";

- "collect information . . . classified as Personal Information or Personal Data under applicable state laws," including examples such as "Internet Protocol (IP) address . . . [and] Geolocation Data such as device location";

- "use your Personal Information" for (i) "Services and Support" i.e., "[t]o provide and operate [its] Services," (ii) "Customization and Personalization,"  and (iii) "[f]or marketing and advertising purposes"; and

- "disclose the Personal Information" that it collects to (i) "service providers or agents who perform functions on our behalf" and (ii) "third-party ad network providers, sponsors and/or traffic measurement services."  (*Id*. Ex. D.)

## III.   LEGAL STANDARD

"[T]he well-established 'first to file rule' [] allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).  "The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013).  "As such, the rule should not be disregarded lightly." *Id*. at 1292-93.  In applying the rule, the Court must analyze three factors: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

Under Rule 12(b)(1), a court should dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025).  It is Plaintiff's burden to

establish that such jurisdiction exists. *Id*.

A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) where a plaintiff fails to state a cognizable legal theory or has not alleged facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

## IV.   ARGUMENT

### 1.   This Court Should Dismiss Or Stay This Action Under The First-to-File Rule

#### A.   *Lynch* Was Filed First

"The first factor 'simply requires a chronology of the actions.'" *Young v. L'Oreal USA*, *Inc.*, 526 F. Supp. 3d 700, 704 (N.D. Cal. 2021) (citation omitted). There is no dispute that *Lynch* was filed on March 15, 2023, two and a half years before this case was filed. (*Lynch* ECF No. 1.) This factor weighs in favor of dismissing (or staying) the case. *Young*, 526 F. Supp. 3d at 704.

#### B.   The Parties Are Substantially Similar

On the second factor, both defendants and plaintiffs are substantially similar. As to defendants, "the Ninth Circuit has held [that] the first-to-file rule requires 'only substantial similarity of parties,' not 'exact identity of parties.'" *Pedro v. Millennium Prods., Inc.*, No. 15-cv-05253-MMC, 2016 WL 3029681, at *4 (N.D. Cal. May 27, 2016) (quoting *Kohn*, 787 F.3d at 1240). "Courts have found that if the parties are not identical in the two related actions, they are 'substantially

6

similar' under the first-to-file rule if they represent the same interests." *Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019). That standard is readily met because the Defendant, Express Scripts, is a subsidiary of the *Lynch* defendant, ES Holding Company, and both defendants share the same interests, i.e., both are defending against similar allegations in relation to the same Website. (*Lynch* ECF No. 10; *Esparza* ECF No. 9.) As a result, they are substantially similar. *Aqua Connect*, 2019 WL 8883452, at *3 (finding the parties shared the same interests where they sought the same relief in their respective cases); *Optoma Tech. Inc. v. Maxwell Ltd.*, No. 24-cv-08147-TLT, 2025 WL 1148286, at *2 (N.D. Cal. Mar. 14, 2025) (finding substantial similarity where one party was common to both actions, and one of the defendants in the first-filed action was the "ultimate parent company" of the plaintiff in the later-filed action).

As to plaintiffs, the rule is satisfied because Plaintiff Esparza falls within the class definition in *Lynch*. *See Marcelo v. Amazon.com, Inc.*, No. 21-cv-07843-JD, 2023 WL 1069880, at *2 (N.D. Cal. Jan. 27, 2023) (similarity of the parties satisfied where plaintiff in second-filed action was a member of the putative class in the first-filed action). Specifically, Plaintiff Lynch seeks to represent a nationwide class of "[a]ll natural persons in the United States who used the Express Scripts Platform and whose communications and/or data were shared with third parties" and a California subclass of "[a]ll natural persons in the State of California who used the Express Scripts platform and whose communications and/or data were shared with third parties." (*Lynch* TAC ¶ 111.) Plaintiff Esparza alleges that he used the Website in April 2025—i.e., the two years after *Lynch* was filed—and that his data was "intercepted" by the Magnite pixel and shared with a third party. (Compl. ¶¶ 3, 8, 11, 16, 17, 23, 25-26, 46.) He therefore falls squarely within the *Lynch* class definition and within the California subclass definition. (*Id*. ¶ 8; *Lynch* TAC ¶ 111.) The second factor thus also weighs in favor of dismissal.

*Amazon.com*, 2023 WL 1069880, at *2.

### C.    The Issues Are Substantially Similar

The third factor also supports application of the first-to-file rule.  The Ninth Circuit has ruled that "[t]he issues in both cases . . . need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240.  In determining whether the issues are substantially similar, courts do not rely on the "uniformity" of the causes of action asserted but instead focus on whether both actions share similar "underlying factual allegations." *Zimmer v. Dometic Corp*, No. 2:17-cv-06913 ODW (MRWx), 2018 WL 1135634, at *4 (C.D. Cal. Feb. 22, 2018).

Both *Esparza* and *Lynch* include allegations that:

1) the defendants installed and embedded an online analytics and web-enhancement tool on the Website (Compl. ¶¶ 3, 11-18, 23, 25-26, 46-47; *Lynch* TAC ¶¶ 4, 7-9, 11, 20, 22-31, 50-57, 69-70, 74-77, 80, 83-91, 93-99, 109-110, 119, 129-132, 135-137, 142-150, 159-162);

2) the online analytics and web-enhancement tool relies on data such as cookie identifiers (Compl. ¶¶ 4, 12, 21; *Lynch* TAC ¶¶ 27, 42, 49-70, 87-91);

3) the defendants allow third parties to intercept and share users' personal information through the online analytics and web-enhancement tool (Compl. ¶¶ 1, 3-4, 33-34, 40, 49; *Lynch* TAC ¶¶ 4, 20, 26, 28, 108, 155-156, 159-163); and

4) users did not consent to the interception and sharing of their information (Compl. ¶¶ 3, 17, 23, 25, 34, 37, 39, 47, 51; *Lynch* TAC ¶¶ 8, 20, 22, 25-26, 54, 75, 78, 92, 119, 136, 145-146, 156, 159-160, 162).

(*See also* Section II.1, *supra*.)

That each case also brings additional causes of action is immaterial.  *See, e.g., Arellano v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. EDCV 22-00639 JGB (KKx), 2022 WL 17128542, at *2 (C.D. Cal. July 15, 2022) (finding actions substantially similar, noting "[t]he fact that this action brings additional claims does not preclude applying the first-to-file rule.").  The relevant inquiry is not whether the causes of action in the two complaints are exactly the same—the relevant

inquiry is whether the two actions rely upon similar "underlying factual allegations." *Zimmer*, 2018 WL 1135634, at *4; *see also Gatlin v. UPS, Inc.*, No. 2:18-cv-03135-SVW-AS, 2018 WL 101611, at *5 (C.D. Cal. Aug. 23, 2018) (applying first-to-file rule despite the lack of identical causes of action). Accordingly, the third factor also weighs in favor of dismissal.

### D.    No Exception to the First-to-File Rule is Applicable

None of the exceptions to the first-to-file rule apply. While the court may, in its discretion, "decline to apply the first-to-file rule in the interests of equity," such discretion is generally reserved for circumstances "where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping." *Urbina v. Freedom Mortg. Corp.*, No. 1:19-cv-01471-NONE-JLT, 2020 WL 4194086, at *4 (E.D. Cal. July 21, 2020) (staying second filed action) (quoting *Wallerstein*, 967 F. Supp. 2d at 1293). This doesn't apply here, where it is the *Defendant* who is seeking to apply the first-to-file rule. *Maciel v. Flowers Foods, Inc.*, No. 20-CV-03814-WHO, 2020 WL 5760448, at *2, *4 (N.D. Cal. Sept. 28, 2020) (finding that "the consideration of comity weighs in favor of granting [Defendant's] motion" where the plaintiff in the second filed action was part of the class of first filed action).

### E.    Dismissal is Appropriate Under the First-To-File Rule

Under the first-to-file rule, dismissal is proper where the court of first filing provides adequate remedies. *Gatlin*, 2018 WL 10161198, at *6 (dismissing claim without prejudice where resolution of the claim in the first-filed motion would provide plaintiffs with adequate remedies). As a member of the nationwide and California classes in *Lynch*, Plaintiff's claims are already being pursued in that case. (Compl. ¶¶ 28-30.) Accordingly, there is no prejudice to Plaintiff if the Court dismisses this action. *See Herrera v. Nat'l Vision, Inc.*, No. 23-cv-1350-LAB-WVG, 2023 WL 5917410, at *3 (S.D. Cal. Sept. 11, 2023) (dismissing case under first-to-file rule where plaintiff in second-filed suit would have opportunity to participate in settlement in first-filed suit). That is exactly the outcome that should

9

follow here.

## 2.    In the Alternative, This Court Should Dismiss This Action Under Rules 12(b)(1) and 12(b)(6)

Plaintiff's Complaint should independently be dismissed, with prejudice, because he lacks standing and fails to state a plausible claim.

### A.    Plaintiff Lacks Article III Standing

The Court should dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(1) because Plaintiff's allegations do not satisfy Article III.

Plaintiff must establish an injury that is "concrete and particularized, and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citation omitted). In the context of privacy actions, Plaintiff must identify the "embarrassing, invasive, or otherwise private information collected" that is "remotely similar to the 'highly offensive' interferences or disclosures that were [traditionally] actionable at common law." *Popa*, 153 F.4th at 791. Plaintiff cannot meet that standard here.

First, Plaintiff is a self-described "tester" who has not suffered any injury. In *Rodriguez v. Autotrader.com, Inc.*, the court held that plaintiff lacked standing due to her status as a "tester." No. 2:24-cv-08735-RGK-JC, 2025 WL 1122387, at *2-3 (C.D. Cal. Mar. 14, 2025). The court explained that privacy claims require a reasonable expectation of privacy, and a self-described tester who visited the site "fully expect[ing]" a violation in order to file suit could not plausibly allege such an expectation. *Id*. at *2. The same rationale applies here, where Plaintiff alleges that he visited the Website as part of serving as a "consumer privacy advocate" and "tester" to ensure compliance with California law. (Compl. ¶ 16.) Plaintiff thus

10

visited the Website fully "expecting [his browsing activity] to be accessed, recorded, and disclosed." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) ("*Rodriguez II*").  As a result, he cannot now "claim an injury when [his] expectations were ultimately met." *Id.*; *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 n.4 (C.D. Cal. Apr. 5, 2023) ("[T]he undisputed fact that [the tester plaintiff][3] filed numerous similar lawsuits before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information[.] To the contrary, it appears—and Plaintiff does not dispute—that Plaintiff visited Defendant's website looking for chat features that would track her conversations so that she could allege statutory violations.").

Second, Plaintiff also fails to allege any concrete injury because he does not identify sensitive information traditionally protected at common law that was captured.  In *Popa*, the plaintiff alleged that the software in question captured her browsing activity, including the fact that she moved her mouse to hover and click on certain products.  153 F.4th 786.  The Ninth Circuit affirmed the trial court's dismissal, holding that Plaintiff failed to identify any embarrassing, invasive, or otherwise sensitive information remotely comparable to the "highly offensive" intrusions recognized by privacy torts. *Id.* at 791.  Here, too, Plaintiff never alleges facts showing that the information allegedly collected was sensitive. At most, Plaintiff alleges that the Magnite pixel captured his "health-related browsing" on a public website, which does not meet the threshold under *Popa*.  (Compl. ¶ 34.)  As the Ninth Circuit has explained, public webpages do not reveal details of a visitor's health or medical history.  *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018).  And the data at issue here, such as IP addresses, cookies, device IDs, referrer paths, and session identifiers (Compl. ¶ 21), is not private because it is

---

[3] Plaintiff Byars was also represented by Pacific Trial Attorneys.

11

necessarily disclosed whenever a user connects to a website. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189-90 (N.D. Cal. 2020) (visitors "voluntarily turn[] over" their IP address "in order to direct" the routing of the connection, making it "inevitable" that a website learns it) (citation omitted).

Because Plaintiff has not alleged disclosure of any sensitive information, the Court should dismiss his claims. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022) (finding disclosure of "basic contact information" inadequate to establish standing); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (dismissing CIPA claims for lack of standing where plaintiff failed to "identify the 'specific personal information she disclosed that implicates a protectable privacy interest'") (citation omitted).

### B.    Plaintiff's Allegations Are Impermissibly Vague

The Complaint should be dismissed under Rule 12(b)(6) for failure to comply with Rule 8.  To satisfy the federal pleading standards, Plaintiff must fully identify "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Plaintiff fails to meet this standard because he does not sufficiently allege what data of his was intercepted by the Magnite pixel.

In *Beltran v. Doctors Medical Center of Modesto*, the plaintiff brought claims based on the defendants' alleged use of the Meta pixel on their website.  No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *1 (E.D. Cal. June 9, 2025).  The court dismissed the complaint, because the plaintiffs failed to specify "the types of searches they conducted or the webpages they viewed, even though their browsing activity on the Website forms the basis" for their lawsuit.  *Id*. at *5 ("For instance, Plaintiffs' complaint provides examples of health conditions Website users may search for, such as 'diabetes,' and searches for doctors based on specialty, such as 'psychiatry,' but Plaintiffs do not specify the types of health conditions and doctors *Plaintiffs actually searched for* on the Website.") (emphasis added).  Here, too,

12

Plaintiff offers no details on information (if any) he allegedly entered on the Website. He claims only that he used the Website to "investigate prescription delivery solutions," and does not specify what (if any) searches he ran, what links he clicked on, or what webpages he visited. (Compl. ¶ 16.) Accordingly, his action should be dismissed. *See King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing wiretap claims where plaintiff failed to "describe her browsing activity, such as what webpages she viewed, what buttons she clicked, [and] what search terms she used").

### C.    Plaintiff's Consent Defeats All Claims

All of Plaintiff's claims fail for the additional and independent reason that he consented to use of the Magnite pixel. Consent defeats any ECPA and CIPA claim. *See* 18 U.S.C. § 2511(2)(d); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) ("Section 638.51 [] includes an exception for the use of . . . trap and trace devices 'if the consent of the user of that service has been obtained.'") (citation omitted). It is also dispositive of Plaintiff's intrusion upon seclusion claim. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("Effective consent negates an intrusion upon seclusion claim.").

A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1177 (9th Cir. 2014). It is enough that a "[p]laintiff [i]s provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014). In *Smith v. Facebook, Inc.*, for instance, the court dismissed the plaintiff's privacy claims at the pleadings stage because the plaintiff had consented to Facebook's terms and, by extension, the use of cookies to track his off-Facebook activity. 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Many courts

13

have followed suit, including in "trap and trace" CIPA cases such as this. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056-57 (N.D. Cal. 2025) (dismissing ECPA, CIPA, and intrusion upon seclusion claims with prejudice where plaintiff consented to defendant's use of Online Technologies); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (sustaining demurrer of CIPA trap and trace claim, holding that users who voluntarily visit a website and disclose their IP addresses may be deemed to have consented).

Here, as soon as he landed on Express Scripts' website, Plaintiff was presented with a clear and conspicuous pop-up banner notifying him of the use of Online Technologies such as the Magnite pixel and providing him with an opt-out mechanism. (*See* Section II.2, *supra.*)  He makes no allegations as to exercising those opt-out rights. (*See generally* Compl.)  Furthermore, Express Scripts' Privacy Policy—hyperlinked in both the banner and in the persistent footer of Express Scripts' website—*also* explicitly disclosed the precise conduct at issue here. (*See* Section II.2, *supra*.)  Plaintiff is a serial litigant in this space, having brought multiple identical cases, which makes him even more sophisticated than a reasonable website visitor presented with specific disclosures about the use of Online Technologies on websites.  His consent warrants dismissal of all claims.

### D.    Plaintiff's ECPA Claim Fails for Additional Reasons

#### i.    ECPA Does Not Impose Civil Liability for Aiding and Abetting

Plaintiff asserts an "aiding and abetting" theory of liability under his ECPA claim. (Compl. ¶¶ 1, 40.)  But such a claim necessarily fails as a matter of law because the statute's private right of action does not impose civil liability for purported aiding and abetting.

ECPA's private right of action provision states:  "[A]ny person whose wire, oral, or electronic communication is *intercepted, disclosed, or intentionally used* in

14

violation of this chapter may in a civil action recover from the person or entity, other than the United States, ***which engaged in that violation*** such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). When Congress enacted ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which previously existed under the 1968 predecessor to ECPA. By deleting the procurement language, Congress confirmed that section 2520(a) does not reach allegations of "procurement" or "aiding and abetting," as Plaintiff alleges here. *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23, 27 (D.D.C. 2012). Rather, this plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral or electronic communication—not against any other person for procuring, enabling, or aiding and abetting another's interception of such. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (N.D. Cal. 2012) (holding that there is no civil ECPA claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).

Because Congress deliberately removed the procurement language when it amended section 2520(a), and because the statute limits liability to those who themselves "engaged in that violation," Plaintiff's aiding-and-abetting ECPA claim should be dismissed. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089-90 (N.D. Cal. 2015) (quoting 18 U.S.C. § 2520(a)) ("[T]here is simply no secondary liability (such as aiding and abetting) under the ECPA."); *Herzer v. Redstone*, No. 17-CV-7545 PSG (KSx), 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (dismissing ECPA claim, explaining that the statute does not recognize secondary liability).

ii.    **Express Scripts Was a Party to the Alleged Communications**

Even putting aside Plaintiff's own consent, under ECPA, consent to the

15

purported interception by one party to the communication is a complete defense. *See, e.g.*, *Weston v. Lefiti*, No. 23-cv-0896-L-DDL, 2023 WL 8458249, at *5 (S.D. Cal. Dec. 5, 2023) (dismissing plaintiff's wiretap claims without leave to amend under ECPA's one-party consent rule).  Plaintiff concedes that Express Scripts was the intended recipient of any information allegedly input by Plaintiff onto the Website.  (*See, e.g.*, Compl. ¶ 36 (describing Plaintiff's activity on the Website as "communications between Plaintiff and the Website").)  It thus follows that Express Scripts was a party to the communication.  Plaintiff also concedes that Express Scripts consented to the use of the alleged Magnite pixel on the Website.  (*See, e.g.*, *id.* ¶ 37 (Express Scripts "intentionally intercepted, or procured the interception of, these electronic communications using the tracking pixel technology").  For this reason alone, Plaintiff's ECPA claim must be dismissed.  *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *5 (N.D. Cal. May 21, 2021) (dismissing ECPA claim because Google's alleged interceptions occurred with the consent of app developers).

Nor can Plaintiff evade dismissal under the party-consent rule by invoking the crime-tort exception.  That exception applies only when the "*purpose* for the interception—its intended use—was criminal or tortious" at the time of the interception.  *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted).  Alleging that the interception itself violates the law is not enough.  The interception must be "done for the purpose of facilitating some *further impropriety*" for the crime-tort exception to apply.  *Id.* (emphasis added).  Thus, Plaintiff must allege that either the "primary motivation or a determining factor" in Express Scripts' alleged use of the Magnite pixel was to injure Plaintiff tortiously.  *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (holding exception did not apply because "interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'") (citation omitted).

Here, Plaintiff's own allegations establish that Express Scripts' purported use of the Magnite pixel was for advertising purposes, which is neither a crime nor a tort. (*See* Compl. ¶¶ 12-13 ("Magnite is used for advertising to consumers across devices[.]").) And Express Scripts' Privacy Policy that Plaintiff agreed to confirms this non-tortious purpose, as it notifies users that Online Technologies may be used to improve website functionality and for advertising purposes. (Cheung Decl. Ex. D.) As a result, Express Scripts' consent to the Magnite pixel defeats Plaintiff's claims. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13.

### iii. Plaintiff Does Not Allege Disclosure of "Contents" Within the Meaning of ECPA

Plaintiff's ECPA claim fails because he does not allege that "contents" of communications were disclosed.

"[T]he term 'contents' refers to the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (addressing "contents" under ECPA). The "content" of a communication does ***not*** include "record information regarding the characteristics of the message that is generated in the course of the communication," such as the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device; and other basic identification and address information. *Id* at 1106; *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("[P]laintiffs predicate their [CIPA] claim in part on information—such as IP addresses, locations, browser types, and operating systems—that is not content."); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (explaining that "contents" has same meaning under both ECPA and CIPA).

Plaintiff bases his ECPA claims on his interactions on the Website to "investigate prescription delivery solutions." (Compl. ¶ 16.) But nowhere does he identify the actual substance of any such communication, much less where or how he allegedly conveyed it. Instead, Plaintiff recites only the conclusory assertion

17

that "contents" of his communications were intercepted, pointing to "HTTP requests, URLs visited, and other metadata exchanged as part of Plaintiff's interactions with the site." (*Id*. ¶ 36.)  Such metadata is not content.  *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1038 (S.D. Cal. 2024) (holding that plaintiff failed to allege interception of "contents" under CIPA where she alleged only general use of a chat feature, and the capabilities of the technology to capture personal information); *King*, 2025 WL 1635419, at *4 (dismissing wiretapping claims where plaintiff failed to "describe her browsing activity, such as what webpages she viewed, what buttons she clicked, [and] what search terms she used").  Without more, Plaintiff's ECPA claim cannot survive.

Indeed, Plaintiff's assertion that contents of his communications were captured is undermined by his own decision to bring an incompatible "trap and trace" device claim under section 638.51 of CIPA.  (Compl. ¶¶ 42-48.)  Plaintiff's claims are based on the Magnite pixel, and Plaintiff alleges that the Magnite pixel is a "trap and trace device" as defined by the statute.  (*Id.* ¶ 22.)  CIPA defines trap and trace devices as devices "designed to capture information about the communication, but **not the content** of the communication itself."  *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025) (emphasis added); *see* Cal. Penal Code § 638.50(c).  Because Plaintiff alleges that the Magnite pixel is a trap and trace device, and a "trap and trace device" does **not** capture content information by definition, Plaintiff's own allegations show that the Magnite pixel did not capture the contents of his communications.  This ends the matter:  his ECPA claim should be dismissed.

### iv.   Plaintiff Does Not Allege that Purported Interceptions Occurred "In Transit"

Plaintiff's ECPA claim also fails because Plaintiff has not alleged that his purported communications were intercepted while in transit.  For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in

electronic storage," meaning the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (citation omitted). California courts recognize that "[e]ven if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage[.]'" *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007).

Here, the only allegations directed at "real time" interception appear in paragraphs 36 and 38 of the Complaint. (Compl. ¶¶ 36, 38.) But those paragraphs merely assert in conclusory fashion that the Magnite pixel "was used to intercept the contents of communications . . . in real time" and that the alleged "interception occurred contemporaneously with the transmission." (*Id.*) Such allegations do nothing more than recite the statutory standard, without pleading facts showing that any communication was actually seized while in transit. As courts have made clear, parroting the word "intercept" is insufficient absent factual allegations establishing that an interception occurred during transmission. *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (noting that baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit"); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (rejecting wiretap claims premised on conclusory allegations of real time interception by website technology).

Because Plaintiff does not allege any facts showing that Magnite actually intercepted communications during transmission, his wiretap claim fails as a matter of law and should be dismissed.

### E.  Plaintiff's CIPA Claim Because the Magnite Pixel is Not a "Trap and Trace" Device

Plaintiff's CIPA claim fails because the Magnite pixel is not a "trap and trace" device within the meaning of the statute—and if the Court were to find that it

19

*is*, Plaintiff would by definition lack Article III standing for his lawsuit.

First, the trap and trace provision in plain terms does not apply to the technology at issue here. Courts have found that "'pen register' and 'track and trace devices' refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025); *see Application of U.S.A. for an Order Authorizing Use of Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (finding similar federal statute governing use of pen registers and trap and trace devices was limited to physical devices attached to a telephone line). Here, Plaintiff alleges that the Magnite pixel operates on the Express Scripts' **Website** – not any telephone number. (*See*, *e.g.*, Compl. ¶ 3.) As such, the Magnite pixel does not qualify as a trap or trace device.

Second, as noted above, courts have held that "'trap and trace devices' are designed to capture information about the communication, but not the content of the communication itself." *Price*, 2025 WL 1237977, at *3. And in bringing this trap and trace claim, Plaintiff concedes that the Magnite pixel did not capture any contents of his communications, thus defeating his ECPA claim. (*See* Section IV.2.D.iii, *supra*.) But if no contents of communications were captured, Plaintiff lacks Article III standing.

*Mitchener v. CuriosityStream, Inc.* is instructive. No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025). There, the plaintiff claimed that TikTok tracking software embedded in a website functioned as a trap and trace device under CIPA. *Id*. at *1. The court rejected that theory. It explained that if the software collected only metadata, "Plaintiff's right to privacy [was] not invaded because he has no expectation of privacy as to that type of data," and the plaintiff consequently lacked Article III standing to bring a claim. *Id*. at *5. The same reasoning applies here. Plaintiff alleges that the Magnite pixel captures routing and

20

addressing information required for the internet to function such as IP addresses, device identifiers, browser fingerprints, referrer paths, headers, and session identifiers. (Compl. ¶¶ 19, 21-22, 46.) Those allegations amount to nothing more than routine metadata collection, which does not invade Plaintiff's protected privacy interest and therefore cannot establish Article III standing. *Mitchener*, 2025 WL 2272413, at *5. Indeed, courts have specifically held that section 638.51 "applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing." *Sanchez*, 2025 WL 487194, at *3. Plaintiff's claim therefore fails as a matter of law.

### F.    Plaintiff Fails to State An Intrusion Upon Seclusion Claim

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *5 (S.D. Cal. Dec. 13, 2024) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). "[T]he common law set[s] a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Plaintiff's claim fails to reach this "high bar" because he cannot allege facts showing that there was an intrusion, that he had a reasonably expectation of privacy in his browsing data, or that any alleged intrusion was highly offensive.

### i.    There Was No "Intrusion"

Plaintiff has not plausibly alleged that there was an intrusion, because there can be no 'intrusion' when a plaintiff voluntarily provides information to a defendant. *Saedi v. SPD Swiss Precision Diagnostics GMBH d/b/a/ Clearblue*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 at *6 (C.D. Cal. Feb. 27, 2025) (collecting cases). In *Saedi*, the court dismissed an intrusion-upon-seclusion claim

21

where the plaintiff alleged that her communications with a website had been disclosed to third parties using similar online technologies "[b]ecause one cannot logically intrude into communications to which they are a party." *Id.* at *8.

The same logic applies here. The intrusion alleged by the Plaintiff is the "accessing [of] Plaintiff's personal information and using it for improper purposes, including by partnering with a data broker to sell Plaintiff's private information to the highest bidder and by targeting Plaintiff with behavioral advertising." (Compl. ¶ 49). But Plaintiff voluntarily conveyed that information to Express Scripts. (*See, e.g.*, *id.* ¶¶ 22 ("the Magnite Tracking Pixel identifies the originating digital sender—Plaintiff"); 36 (alleging interception of "communications between Plaintiff and the Website"). Plaintiff's voluntary disclosure of information precludes his intrusion upon seclusion claim. *See Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 342-43 (E.D. Pa. 2012) (voluntary disclosure of information to defendant precluded intrusion upon seclusion claim, even where information sold to third parties).

### ii.    There Was No "Reasonable Expectation of Privacy"

Plaintiff has not plausibly alleged that Express Scripts' conduct violated his reasonable expectation of privacy. To determine whether a reasonable expectation of privacy exists, courts consider "a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *In re Facebook, Inc. v. Internet Tracking Litig.*, 956 F.3d 589, 601-02 (9th Cir. 2020). "[I]f the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests,'" the claim may be dismissed "as a matter of law." *Low*, 900 F. Supp. 2d at 1025 (citations omitted). Courts have found that "there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). Both are true here.

First, even if Plaintiff were not a "tester" scouring the internet looking for a

22

lawsuit, "the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, No.: 22cv2012 DMS (MSB), 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024). As such, courts have found that consumers do not have a reasonable expectation of privacy in their activities on the internet. *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (dismissing invasion of privacy claim alleging the collection of browsing data because "contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much"). This case presents a stronger basis to dismiss than *Papa Johns* and *Hubbard*, because Plaintiff actively *sought out* the purported conduct at issue here. (Compl. ¶ 16.) As a self-described "tester" (*id.*) who "actively seeks out privacy violations, '[he] had no expectation of privacy' when [he] visited [] [W]ebsite." *Rodriguez II*, 2025 WL 1085787, at *1.

Second, courts have consistently held that the categories of information that Plaintiff identifies in his Complaint—such as browsing activity, metadata, and technical identifiers—do not qualify as private or create an expectation of privacy. *Heeger*, 509 F. Supp. 3d at 1189 (finding no "legally protected privacy interest in IP addresses").

Finally, Plaintiff's attempt to ground a reasonable expectation of privacy in Express Scripts' alleged "promises" is unavailing. Plaintiff asserts that Express Scripts misled users with "false privacy promises" (Compl. ¶¶ 31, 33-34), but those allegations are directly contradicted by Express Scripts' Privacy Policy, which expressly disclosed the use of Online Technologies like the Magnite pixel, including the collection and sharing of user information. (*See* Section II.2, *supra*.) Courts have consistently rejected privacy claims where, as here, the challenged practices were fully disclosed in governing privacy policies. *M.D. v. Google LLC*, No. 24-cv-06369-AMO, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025) (dismissing privacy claims and finding that plaintiffs had consented to BlueChew's

23

use of Google and Meta technologies on its website based on plaintiffs' agreement to the relevant terms of service and privacy policies while registering for a BlueChew user account). Accordingly, Plaintiff cannot plausibly allege that he was misled into believing his activity on the Website would remain private.

### iii.    Express Scripts' Conduct Was Not Highly Offensive

Plaintiff also fails to allege that Express Scripts' conduct was highly offensive, another required element of his invasion of privacy claim.

An invasion of privacy is highly offensive only if it is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Low*, 900 F. Supp. 2d at 1025 (citation omitted). Notably, courts have held that the collection and subsequent dissemination of user data for marketing purposes is not a serious invasion of privacy. *In re Google Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (dismissing intrusion upon seclusion claim based on "disclosure [of data] to third-party developers contrary to Google's own policies" and recognizing that there is a "**high bar**" for the "requisite 'intrusion [that is] highly offensive to a reasonable person'") (emphasis added) (quoting *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)) (dismissing invasion of privacy claim where "information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices"). This is particularly so given that Plaintiff, as a California-based user, would not have been able to navigate the Website without first interacting with the cookie banner that notified users of the use of Online Technologies and of the Privacy Policy. (*See* Section II.2, *supra*.) He therefore was **on notice** of the conduct alleged here. As a result, Express Scripts' alleged conduct cannot be regarded as "highly offensive."

Here, Plaintiff never provides facts regarding the sensitivity of the information allegedly collected. He alleges only that it includes cookie IDs,

24

operating system IDs, IP addresses, URLs, clicks, and other browsing data, including "health-related browsing" on a *public* website that does not capture protected health information.  (Compl. ¶¶ 12, 21, 28, 34.)  This does not include "enough facts" to permit the "context-specific" inquiry required of privacy claims. *Heeger*, 2019 WL 7282477, at *3; *see In re Google Location History Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (rejecting privacy claims as "far too conclusory and speculative" without alleging which, if any, specific data was collected, whether the data concerned "[a] person's general location," which would not give rise to a privacy claim, or "how often their geolocation was accessed").  In any event, none of the information allegedly captured is sensitive—such data elements are routinely captured to facilitate internet communications, and Plaintiff's allegations are therefore insufficient to demonstrate a highly offensive invasion of a protected privacy interest.  *Posadas*, 2024 WL 5114133, at *7 (dismissing invasion of privacy claim where plaintiff did not plead facts suggesting defendant collected plaintiff's intimate or sensitive personally identifiable information); *see also Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2020) (finding the disclosure of social security numbers of job applicants did not constitute a highly offensive breach of privacy).

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss this action under the First-to-File Rule.  In the alternative, the Court should dismiss this action under Rule 12(b)(1) or 12(b)(6).

Dated:  October 24, 2025                    MORRISON & FOERSTER LLP


By: */s/ Tiffany Cheung*
       Tiffany Cheung

Attorneys for Defendant
EXPRESS SCRIPTS PHARMACY,
INC., DBA WWW.EXPRESS-
SCRIPTS.COM

26